## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **:** |
| | **:** |
| **v.** | **:**     **Criminal No. JKB-14-0348** |
| | **:** |
| **GARRY NICHOLSON,** | **:** |
| | **:** |
| | **:** |

**ooooOoooo**

## GOVERNMENT'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTIONS TO SUPPRESS

The United States of America, by its undersigned counsel, submits its memorandum of law in opposition to the following motions filed by the Defendant, Garry Nicholson: the motion to suppress statements (paper 17); the motion to suppress out-of-court and in-court identification (paper 17); the motion to suppress tangible and derivative evidence (paper 19); the motion to suppress tangible and derivative evidence seized in connection with search warrants (paper 18); and the motion to suppress tangible and derivative evidence seized in connection with failure to knock and announce (paper 28).   For the reasons stated herein, the motions should be denied.

### FACTUAL BACKGROUND

From January 2014 through March 5, 2014, detectives from the Baltimore Police Department (BPD) engaged in a drug trafficking investigation targeting the defendant.   In January and February 2014, the detectives received information from a registered CI identifying the defendant as a drug trafficker.   Specifically, the CI indicated that the defendant sold Percocet, heroin, and cocaine in the Baltimore Metropolitan area.    To confirm that identity of the person described by the CI, officers showed a picture of the defendant to the CI.   The CI confirmed that the defendant was the drug trafficker described by the CI. The CI gave particularized information regarding the location of the defendant's residence, his illegal activities, locations of his illegal

activities, and his methods of conveyance used to perform such activities.

During February 2014, the detectives received additional information from a second registered and reliable CI regarding the defendant.   This CI also indicated that the defendant sold Percocet, heroin, and cocaine in the Baltimore Metropolitan area.   This CI also gave particularized information identifying the location of the defendant's residence, his illegal activities, locations of his illegal activities, and his methods of conveyance used to perform such activities.   Again, to confirm the identity of the subject, officers showed the second CI a picture of the Defendant, and the CI confirmed that the Defendant was the drug-dealer in question.

Detectives then surveilled the Defendant's residence and observed the vehicles as described by the CIs.   The detectives developed information that confirmed the identity of the Defendant, his connection to the vehicles, and the locations he frequented as described by both CIs.

On January 20, 2014, the detectives followed the Defendant from his residence in Owings Mills, Maryland to the 3000 block of Druid Park Drive in Baltimore City, Maryland.   Detectives observed the Defendant stop in the travel lane and meet with a second individual, later identified as Dante Cook.   Cook had also parked in the travel lane.   Both men exited their respective vehicles, approached each other, and engaged in a hand to hand transaction.   The surveilling officer then called other detectives involved in the investigation to respond to that location.   Those detectives were aware of the observed hand to hand transaction, but did not wish to disclose that information during their interaction with the Defendant and Cook in order to protect the investigation at that time.   The detectives made contact with the Defendant and Cook.   When detectives made contact with Cook, the detectives noted the smell of burnt marijuana emanating from his person. The Defendant indicated to the detectives that he had stopped to exchange phone numbers after he

had seen Cook. As previously mentioned, the detectives had been observing the Defendant and knew this to be untrue.   The Defendant gave consent to search his vehicle and nothing was found. The Defendant was given a written warning regarding the traffic violation and allowed to leave.

The detectives noted that the Cook appeared to be and acted nervous.   Cook informed the detectives that he did not have a valid license.   Detectives learned the license was in fact suspended.   Under Maryland law, driving with a suspended license is an arrestable offense.   The detectives placed Cook under arrest after they had confirmed the suspension.   While a detective was patting down Cook, the officer recovered a single Percocet tablet from Cook's person.   The detectives also searched Cook's vehicle and found ten zip lock bags of heroin and a handgun. Cook was arrested and charged and a statement of probable cause was drafted reflecting the arrest.

The police did include in the statement of probable cause (attached as Exhibit 2 to this memorandum) the fact that they had observed a hand-to-hand transaction between the Defendant and Cook.   Cook's license suspension provided a basis for the arrest without the need to reference the observed hand to hand transaction.   Likewise, the Detectives did not arrest the Defendant. The reason that the hand-to-hand transaction was not mentioned and the Defendant was not arrested, was to avoid jeopardizing the then-ongoing investigation of the Defendant.

Following the January 20, 2014 events, Detectives continued their investigation including surveillance of the Defendant at 709 Nottingham Road, Apartment 5B, Baltimore, Maryland. Both CIs indicated that the Defendant used this location to facilitate his drug sales.   On February 8, 2014, detectives observed the Defendant arrive at the location, enter the building and then leave the building minutes later.   Detectives noted that the Defendant continually scanned the area and when he reentered the 2007 BMW, he removed a small bag from the BMW and then quickly returned to the apartment.   Twenty minutes later, the Defendant exited the location carrying a

jacket he did not have when he entered.   The Defendant again scanned the area as he approached the BMW.   Detectives noted the manner in which he carried the jacket as if he was trying to maintain the contents.   The Defendant then placed the jacket and other items in the trunk of the BMW in a manner that suggested an attempt to conceal.

The Defendant then drove to another location and detectives observed him engage in a hand to hand transaction with an unidentified male and then left that area.   The Defendant then engaged in a series of actions that the detectives associated with counter-surveillance maneuvers. The Defendant then drove to another location and was observed engaging in another hand to hand transaction with another person.   Surveillance could not be continued, but the detectives later observed the Defendant's vehicle outside his residence in Owings Mills, Maryland.

On February 11, 2014, the detectives applied for and were granted a search and seizure warrant for the Defendant, 709 Nottingham Road, Baltimore, Maryland; 9408 Owings Heights Circle, Owings Mills, Maryland; and, a 2007 BMW, Maryland Registration 3AY2556.   In advance of the execution of the warrants, the detectives continued to investigate the Defendant and observed that his normal behavior had changed.   Specifically, the Defendant was not going to the Nottingham Road location, the believed stash location.   As a result the detectives reached out to the first CI.   That CI informed the detectives that the Defendant was having difficulty procuring CDS to distribute and the CI would notify the detectives when the Defendant was resupplied. During the week of February 23, 2014, the CI informed the detectives that the Defendant was once again in possession of CDS for the purposes of sale.   Under Maryland law a search warrant must be executed within ten days of its being issued, as a result Detectives again applied for and were granted a search and seizure warrant for the Defendant, 709 Nottingham Road, Baltimore, Maryland; 9408 Owings Heights Circle, Owings Mills, Maryland; and, a 2007 BMW, Maryland

Registration 3AY2556 (a copy of the supporting affidavit and search warrant papers is attached as Exhibit 1 to this memorandum).

On March 5, 2014 detectives executed the warrant at 709 Nottingham Road.   Detectives approached the location, knocked, and announced themselves as police.   Detectives immediately heard the sound of running water and a male voice cursing in frustration.[1]   The detectives feared the Defendant was destroying evidence of narcotics trafficking and used force to make entry.

Upon entry, detectives observed the Defendant standing at the kitchen sink running water over numerous clear plastic bags, suspected narcotics packaging.   On a table next to the Defendant were two knotted bags of marijuana.   The Defendant was secured, advised of his rights under *Miranda* and searched.   During this search, a plastic bag was found in his front pants pocket; inside that bag were ten knotted smaller bags of cocaine base.   Detectives also secured a female who was in the residence.   Defendant acknowledged that he understood his rights. Detectives conducted a search of the location.   While the Detectives searched the location the Defendant repeatedly asked "What is Going on?" and "What is this?".

The officers found the following in a kitchen cabinet: numerous razor blades with cocaine residue on them, playing cards with cocaine residue, two scales with heroin residue and cocaine residue, cutting agent, and two boxes of 10mm ammunition.   Only items associated with the production and manufacturing of CDS were located inside the cabinet.

The officers found the following in the front bedroom: paperwork in the name of the Defendant, an identification card belonging to the Defendant, men's clothing, and a safe inside the closet.   The safe was opened and the following items were found inside the safe: a clear plastic bag containing heroin, a ziplock bag containing heroin, plastic bag containing marijuana, plastic

---

[1]        Specifically, "Oh Shit."

bag with cutting agent, six plastic bags containing cocaine, and multiple large knotted bags containing cocaine base.   The Defendant was then transported and charged.

## ARGUMENT

## I.   THE MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED

At this time the Government is only aware of the Defendant following statements, "Oh Shit," "What is this," and "What is going on?"   In general statements made to law enforcement must comply with the requirements of *Miranda* and the Due Process clause of the Fifth Amendment Statements.   *Colorado v. Connelly*, 479 U.S. 157 (1986)*; Miranda,* 384 U.S. 436 (1966).   Where *Miranda* rights have been waived, the analysis of the voluntariness of the *Miranda* waiver and the voluntariness of the statements under the Due Process Clause is the same. *United States v. Christobal*, 293 F.3d 134 (4th Cir. 2002).

As the Supreme Court held in *Moran v. Burbine,* a Defendant may waive his *Miranda* rights "provided the waiver is made voluntarily, knowingly and intelligently."   *Burbine,* 475 U.S. 412, 421 (1986). In order to be knowing and intelligent, the waiver must have been made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."   *Christobal ,*293 F.3d at 139-140.   The test for determining whether a statement is voluntary under *Miranda*, "is whether the Defendant's will has been overborne or his capacity for self-determination critically impaired."   *Id* at 140, (quoting *United States v. Pelton,* 835 F.2d 1067, 1071 (4th Cir. 1987).   To make this determination, courts must consider the "totality of the circumstances," including the characteristics of the Defendant, the setting of the interview, and the details of the interrogation.   *Pelton*, 835 F.2d at 1071.

Coercive police activity is a necessary predicate to a finding that a *Miranda* waiver was involuntary.   *Connelly*, 479 U.S. at 167.   Such coercion has been found where the suspect was

subjected to severe physical abuse, *see Brown v. Mississippi*, 297 U.S. 278 (1936), held incommunicado and questioned for over 36 hours without sleep or rest, *see Ashcraft v. Tennessee*, 322 U.S. 143 (1944), given "truth serums," *see Townsend v. Sain*, 372 U.S. 293 (1963), or threatened with a loaded gun while wounded, *see Beecher v. Alabama*, 389 U.S. 35 (1967).   A deficient mental condition (whether the result of a pre-existing mental illness or, for example, pain killing narcotics administered after emergency treatment) is not, without more, enough to render a waiver involuntary.   *Christobal,* 293 F.3d at 141 (waiver given after the suspect had been shot multiple times, undergone emergency surgery and given pain killers and narcotics found to be voluntary).   "While mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry."  *Connelly*, 479 U.S. at 165.

Here, there was no questioning of the Defendant.   At the time of the incident, the Defendant was 41years old and had already amassed considerable experience in the criminal justice system.   The Defendant was informed of his *Miranda* rights and the Defendant made statements not in response to any questioning.   Accordingly, Defendant's motion to suppress his statements should be denied.

## II.   THE MOTION TO SUPPRESS OUT-OF-COURT AND IN-COURT IDENTIFICATION SHOULD BE DENIED AS MOOT.

In this case, the Government at this time has no intention of calling either confidential informant for the purpose of identifying the Defendant in court, and the government does not anticipate presenting any evidence of any out-of-court identification by the informants at trial. Therefore, the motion to suppress out-of-court and in-court identification should be dismissed as moot.

### III.   THE DEFENDANT HAS NO STANDING TO CHALLENGE THE SEARCH AND SEIZURE WARRANT WITH REGARDS TO 709 NOTTINGHAM ROAD

The Fourth Amendment protects persons against unreasonable searches of "*their* persons [and] houses" (emphasis added). U.S. Const. amend. IV. A person only has standing to claim the protection of the Fourth Amendment if he has a reasonable expectation of privacy in the searched place.   *See Minnesota v. Carter*, 525 U.S. 83, 83 (1998).   If a defendant was merely a short-term guest, then he would have no standing to argue that his Fourth Amendment rights were violated. *See id.* at 91.

The Defendant neither lives in nor leases 709 Nottingham Road.   The lease names Miriam Jones and Bianca Jones as leaseholders.[2]   *See* Exhibit 1 p 25.   The Defendant does not maintain any utility accounts for 709 Nottingham Road.   The utility account is registered to Bianca Jones. *Id*   The CI information, surveillance, and database searches make it clear that the Defendant does not reside at 709 Nottingham Road.   For his Maryland Motor Vehicle Administration issued driver's license, the defendant claimed his address as 9704 Eustice Road, Randallstown, Maryland. *Id* at 24.   As such the Defendant does have a reasonable expectation of privacy in 709 Nottingham Road.   The Defendant used 709 Nottingham Road to facilitate his drug dealing as a "stash house."   He stored materials, equipment, and a supply of CDS all to continue to engage in the business of CDS sales.   The Defendant was present at 709 Nottingham to engage in business and therefore has no legitimate expectation of privacy in 709 Nottingham and consequently no standing to challenge the search.   *See Minnesota v. Carter*, 525 U.S. 83, 89-90 (1998).   Also 709 Nottingham is the residence of another individual and the Defendant was present for the purpose of preparing CDS for distribution and therefore has no reasonable expectation of privacy

---

2  Miriam Jones was present on the day of the search and was also arrested.

and consequently no standing to challenge the search.   *See United States v. Gray*, 491 F3d 138,

146-147 (4th Cir. 2007.)   For all of these reasons the Defendant does not have standing to

challenge the search of 709 Nottingham Road and therefore his motions to suppress (Papers 18, 19,

and 28) should be denied.

## IV.    MOTION TO SUPPRESS TANGIBLE AND DERIVATIVE EVIDENCE SHOULD BE DENIED.

The Defendant has moved to suppress the evidence recovered, arguing that the Affidavit in

support of the warrant lacked sufficient probable cause.   An examination of the Affidavit (Exhibit

1), however, makes clear that the affiant provided ample evidence to support the issuance of a

warrant.   Moreover, even assuming insufficient probable cause, the officers relied on the warrant

in good faith.

### A.   The Affidavit in Support of the Warrant Contained Sufficient Probable Cause

The Fourth Amendment protects against unreasonable searches and seizures through its

requirement that search warrants issue only upon a showing of probable cause.   *See United States*

*v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004).    Although not reducible to a precise definition or set

of legal rules, the Supreme Court has held that probable cause exists "where the known facts and

circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband

or evidence of a crime will be found [at the location to be searched.]"   *Ornelas v. United States*,

517 U.S. 690, 696 (1996).   In recognition of the fluid and particularized nature of probable cause,

this Circuit has held that a magistrate or commissioner's decision to issue a search warrant is

entitled to great deference.   *Hodge,* 354 F.3d at 309.   Indeed, the duty of a reviewing court is

"simply to ensure that the magistrate had a substantial basis for concluding that probable cause

existed."   *See Id* (quoting *Illinois v. Gates,* 462 U.S. 213, 238-239 (1983)).

In the case at hand, the Affidavit in Support of the Application to Search 709 Nottingham Road, Baltimore, Maryland; 9408 Owings Heights Circle, Owings Mills, Maryland; and, a 2007 BMW, Maryland Registration 3AY2556 (Exhibit 1) reported that investigators had two separate CIs both of whom had provided reliable information leading to numerous arrests for drug offenses and firearms offenses.   Exhibit 1 at 0022 and 0024. They provided exacting detail as to the Defendant: that he sold heroin, cocaine, and Percocets, the vehicle(s) he drove, his residence, and the location of his "stash house."   The Affidavit further provided that on January 20, 2014, detectives observed the defendant supply Cook with CDS and that CDS was recovered from the Cook.   The Affidavit further provided that detectives observed the defendant engage in what they believed based on their training and experience, to be two separate CDS transactions on different occasions.   The Affidavit further provided that the Defendant was observed exiting and entering both 709 Nottingham Road, Baltimore, Maryland and 9408 Owings Heights Circle, Owings Mills, Maryland; as well as driving the 2007 BMW, Maryland Registration 3AY2556.

In sum, the Affidavit established probable cause of the following relevant facts:

- First, Nicholson was engaged in drug-dealing.   The two confidential informants provided specific information about that activity.   Importantly, the informants confirmed that they had first-hand knowledge of particularly material facts: one CS had seen drugs come from the 709 Nottingham Road residence during early 2014, Exhibit 1 at 0022, and the second CS personally identify the Nottingham location to police and had personally observed Nicholson engage in drug activities during early 2014.   *Id.* at 0022.[3]

---

3  One CS supplied information for financial remuneration the other CS provided information for judicial consideration

- Nicholson's drug-trafficking activities were confirmed by the events during the Cook arrest, when police observed Nicholson engage in a drug deal and recovered drugs from his customer.   *Id.* at 0025.

- The connection between Nicholson's drug activities and 709 Nottingham Road was also established by strong evidence.   As already mentioned, both informants mentioned the Nottingham location.   *Id.* at 0022-23.

- Additionally, the February 8, 2014 events presented a clear example of Nicholson's access to the target residence and his use of the residence as a stash location. Nicholson went to the location, at night, turned on the lights, retrieved items from his car and removed something (wrapped in a jacket) from the location, turned off the lights, and left.   *Id.* at 0026.   After leaving, the defendant promptly engaged in two apparent drug deals (hand to hand transactions) with separate persons.   *Id.* at 0027.   This information supported the theory that Nicholson was engaged in drug activity and using 709 Nottingham in furtherance of that activity.

Thus, the Affidavit clearly provided sufficient evidence that 709 Nottingham Road, Baltimore, Maryland was the site of drug trafficking.   Based on this, and the affiant's statement regarding the likelihood of finding additional evidence of narcotics trafficking, Exhibit 1 at 0028-29, it is clear that the Affidavit provided ample probable cause to support issuance of the warrant.   Accordingly, Defendant's motion to suppress the evidence recovered from the 709 Nottingham Road, Baltimore, Maryland address should be denied.

### B.   The Officers Relied on the Warrant in Good Faith.

Moreover, even assuming that the search warrant lacked sufficient probable cause, the

"good faith" doctrine militates against suppression of the evidence seized.   As is well established, even where the court ultimately finds a warrant to be invalid, the fruits of the search conducted pursuant to that warrant should not be suppressed "unless a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."   *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir.2002) (quoting *United States v. Leon*, 468 U.S. 897 (1984)). As the Supreme Court explained in *Leon*, "the deterrence purpose of the exclusionary rule is not achieved through the suppression of evidence obtained by "an officer acting with objective good faith within the scope of a search warrant issued by a magistrate."   *United States v. Perez*, 393 F.3d 457, 461 (4th Cir.2004) (quoting *Leon*, 468 U.S. at 920, 104 S.Ct. 3405).   Accordingly, under *Leon*'s good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'" *Id.* (quoting *Leon*, 468 U.S. at 922, 104 S.Ct. 3405).).

Here, the officers' reliance on the warrant was objectively reasonable.   As discussed in the preceding section, the Affidavit was robust and described a substantial investigation that established drug activity, linked to the target residence at 709 Nottingham.   Police were certainly entitled to rely on the Affidavit given the quantum of evidence contained in the document.   Nor is there any allegation that the Judge Sampson abandoned his neutral judicial role or that the warrant was facially invalid (i.e. failed to particularize the place to be searched or things to be seized).   Thus, on its face, the warrant contained sufficient indicia of probable cause as to make belief in its existence reasonable.[4]   Given these considerations, the officers' reliance on the warrant was objectively reasonable and, therefore, the evidence seized should not be suppressed,

---

[4]      The defense claims that the *Leon* doctrine does not apply in this case under *Franks*.   That issue is addressed in section IV.

even assuming the Court finds the warrant to be invalid.

## V.     MOTION FOR FRANKS HEARING SHOULD BE DENIED

The Defendant has alleged in his motion that he is entitled to a hearing pursuant to *Franks v. Delaware*, 348 U.S. 154 (1978) based on his claim that the affidavit supporting the search warrant contained two material misstatements and one omission.   The first alleged material misstatement concerns the hand to hand transaction between the Defendant and Cook as observed by a BPD detective; the second alleged material misstatement concerns the asserted reason the detectives did not arrest the Defendant after observing the hand to hand transaction; and the alleged omission concerns the affiant not describing the Defendant's consent to search both his person and his vehicle.

"An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit."   *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011).   For a criminal defendant to be entitled to a *Franks* hearing, he must make a "dual showing ... which incorporates both a subjective and an objective threshold component."   *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).   First, the defendant must show that the affiant to a search warrant made a false representation in, or omission from, the warrant affidavit, "knowingly and intentionally, or with reckless disregard for the truth."   *Franks*, 438 U.S. at 155-56; *Colkley*, 899 F.2d at 300.   The defendant's preliminary showing must be sufficient for the district judge to infer that the false statement or omission was designed to mislead, or was made in reckless disregard of whether it would mislead, the issuing judge.   *Colkley*, 899 F.2d at 300-01.

Second, the defendant has the burden to show that the false statement or omission was "essential to the probable cause determination: 'if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant

affidavit to support a finding of probable cause, no hearing is required.'" *Id.* at 300 (quoting *Franks*, 434 U.S. at 171-72).

A defendant carries a heavy burden in showing the necessity of a *Franks* hearing. *See United States v. Jeffus*, 22 F.3d 554, 558 (4th Cir. 1994). The "showing 'must be more than conclusory' and must be accompanied by a detailed offer of proof." *Colkley*, 899 F.2d at 300 (quoting *Franks*, 438 U.S. at 171). Allegations of such misconduct must be supported through affidavits and sworn witness statements, or an explanation of why they cannot be provided. *Franks*, 438 U.S. at 171.

### A.  There Is No Discrepancy Between the Search Warrant Affidavit and the Cook Statement of Probable Cause.

The defense's first claim is that a *Franks* hearing is justified because the search warrant's reference to a "hand-to-hand" transaction is false. The defense has failed to sustain its burden of making a substantial preliminary showing on this issue.[5]

The defense argument is based on comparing the search warrant affidavit (Exhibit 1) and the Cook statement of probable cause (Exhibit 2) with respect to the description of the Defendant's interaction with Cook, as well as the arrest of Cook. Specifically, defense states that because the observed hand to hand transaction is omitted from the statement of probable cause (herein "SOPC") for Cook's arrest, it must not have occurred, and the search warrant affidavit's reference to it is therefore a misstatement. This argument fails for several reasons.

First, the SOPC is of limited utility in impeaching the search warrant affidavit because the

---

[5]     The government agrees that the "hand-to-hand" transaction reference was material to the issuance of the search warrant. Therefore, although the government believes that the defense argument fails with respect to whether the statement was intentionally or recklessly false, the government will not argue that the removal of this reference would not affect the probable cause.

With respect to the defendant's other two *Franks* arguments, the government does not believe that any of the allegedly false information was material to the issuance of the warrant.

two documents were authored by different people.   The notion that one officer's failure to mention a particular detail results in another officer's inclusion of that detail must be false is an overbroad application of *Franks* and not enough to sustain the defense's burden.

Second, the SOPC and the search warrant affidavit do not contradict each other.   The SOPC does not say that a hand to hand did not take place; it simply does not mention a hand to hand one way or the other.   Instead, the SOPC states that the detectives observed the Defendant and Cook "…..interacting on the side of the road.   Believing this behavior to be suspicious SES detectives were called to approach the individuals for further investigation."   Exhibit 2 at 2.   The defense wishes to draw a negative inference from this, but inferring that one person had acted with intent or with reckless disregard for the truth because another person omitted a detail or used different language to describe an event is, again, beyond the strictures of *Franks*.

As much as the defense wants them to be different, the Affidavit and the SOPC are not inconsistent with one another.   They do not contradict one another.   The simple fact is that the Affidavit provides more detail on a particular issue than the SOPC does.   That simply does not prove a reasonable inference that the warrant was written with an intent to mislead the magistrate or with a reckless disregard for the truth.

The defense is literally attempting to draw a *Franks* inference based on the difference between observation of a "hand to hand" transaction (the phrase used in the search warrant affidavit) versus a discussion of two people "interacting on the side of the road" (the phrase used in the SOPC).   There is simply no inconsistency here.   The search warrant affidavit's description is more detailed, but it is not contradicted by the SOPC's discussion of an interaction.   Put another way, there is no material distinction between seeing a "hand to hand" transaction versus an "interaction."   The only difference, if any, between the two documents is in the level of detail

provided and in the word choice.   Such differences (if they can be called that) are not enough to sustain the burden of proof under *Franks.*

Third, any differences in word choice or content in the search warrant affidavit and the SOPC is understandable given that the documents served totally difference purposes.   Both documents are accurate, but they address different issues and provide different levels of detail because of the respective purposes they served.   An overall review of the search warrant affidavit demonstrates that it provides (and was intended to provide) a much more comprehensive description of the overall investigation of the Defendant than the Cook SOPC was required to provide.   The Affidavit provides a timeline regarding the investigation that begins well before the day of Cook's arrest, such as the confidential source information, the investigative background, the surveillance of the Defendant, and ultimately the surveillance of the Defendant and Cook. The Cook arrest (and the recovery of the Percocet pill) is only one part of a longer investigation discussed in the search warrant affidavit.

The Cook SOPC, on the other hand, had a singular purpose: to justify the bringing of criminal charges against Cook.   There was no need in such a document to disclose any intelligence concerning the Defendant, to provide the complete detail of the interaction between the Defendant and Cook (given that the Cook arrest was independently justifiable) or to tip a reader off to the fact that the Defendant was believed to be Cook's supplier.   There was simply no reason to mention the hand to hand transaction between Cook and the Defendant.   Instead, the SOPC used the more general, but also accurate, term "interaction."

The reason for this drafting of the SOPC was to not jeopardize the ongoing investigation concerning Nicholson.   Accordingly, the SOPC used general language when describing who instructed the detectives to approach the Defendant and Cook.   These are simply not material

misrepresentations in either document.   There is no requirement that Cook be informed via his SOPC of the observed hand to hand transaction.

The defense asserts that without such a disclosure in Cook's SOPC the hand to hand did not happen.   The defense provides no evidence in support of that position, however, beyond inferences drawn from comparing the search warrant affidavit and SOPC.   As discussed above, that is not a sufficient basis to justify a *Franks* hearing.

In the event that this matter does proceed to a *Franks* hearing, however, the government notes that the investigating officer actually made a contemporaneous record when they observed the hand-to-hand transaction between Cook and the Defendant.   The officers involved in this investigation did take hand written notes contemporaneous with Cook's arrest.   A copy of the notes are attached as Exhibit 3.     These notes indicate the location, surveillance, and observations regarding the night of January 20, 2014.   Specifically it states that a hand to hand transaction occurred at 9:45 PM and "arrest team advised," the same as asserted in the Affidavit.   Exhibit 3 at 2.

**B.     The Omission From the Search Warrant Affidavit of the Defendant's Consent to Search His Vehicle Was Not Material to the Issuance of the Warrant, and Was Also Not Intentionally Misleading or Reckless.**

The defense's second *Franks* argument is that the search warrant affidavit should have included the Defendant's consent to be searched and the results of that search and that the omission of that information was a material misstatement.   The defense argument is without merit.

First, the inclusion or exclusion of this information from the search warrant affidavit was not material to the showing of probable cause.   Even if the information pointed out by the defense were put back into the Affidavit, it would not have affected the probable cause showing or impacted on the issuance of the warrant.   The omission of the defendant's willingness to have his

17

car searched was of no relevance to whether he had previously engaged in a drug-deal at that time, because the deal (by the warrant's theory) was already completed following the completion of the hand-to-hand transaction with Cook.   The fact that the defendant had no drugs in his case was also of no exculpatory value, again because the police had already observed a complete drug deal and the narcotics in question had already been transferred to Cook during the hand-to-hand transaction. Even if the consent and car search had been described in the Affidavit, probable cause would still have been established by virtue of the confidential source information, the various surveillances and hand-to-hand events on other days, and the recovery of the Percocet pill following a hand-to-hand transaction with Cook.

Moreover, the Affidavit *did* relate an exculpatory statement by the Defendant and, although it did not expressly stated that the Defendant denied having drugs, the Defendant's statement about meeting to exchange phone numbers with Cook certainly impliedly denied any drug deal with Cook.   The Defendant's statement, as related in the Affidavit, implied that he was meeting with Cook for a different reason and was wholly exculpatory as to any drug activity.

Finally, the Affidavit did not suggest or imply, directly or indirectly, that Nicholson had any additional drugs on him or that he was engaged in any particular activity apart from the hand to hand transaction with Cook. This again diminished any exculpatory impact from the fact that no drugs were found in Nicholson's case.   Additionally, there was at least a marginally inculpatory aspect to the info in the SOPC a drug-sniffing dog alerted to the car.   The police could have included all of this information in the Affidavit, but it would have added very little beyond their observations, and even less beyond the Defendant's exculpatory statement, and would not have defeated probable cause.

Second, and for many of the same reasons, the failure to discuss the search of the car was also not evidence of an intent to mislead.   Courts considering *Franks* hearings consistently have recognized that the burden to establish an intent to mislead or reckless disregard based on *omitted* information is necessarily higher higher for defendants making claims of omissions rather affirmative false statements.   *See United States v. Clenney*, 631 F.3d 658, 664 (4th Cir. 2011).   Merely identifying factual omissions is insufficient.   *Id.*   Rather, to obtain a Franks hearing, the defendant must show that the omissions were "designed to mislead, or ... made in reckless disregard of whether they would mislead" and that the omissions were material, meaning that their "inclusion in the affidavit would defeat probable cause."   *Id.* (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir.1990)).   *See also*, *Mays v. City of Dayton,* 134 F.3d 809, 815 (6th Cir.1998) ("…affidavits with potentially material omissions... are much less likely to merit a *Franks* hearing than are affidavits including allegedly false statements…").   This is so because otherwise law-enforcement officers will be subjected to endless second-guessing about information they could or should have included.   *See United States v. Atkin,* 107 F.3d 1213, 1217 (6th Cir.1997) (explaining that the higher burden on defendants alleging omissions is necessary because "an allegation of omission potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit").   "When relying on an omission, rather than on a false affirmative statement, Tate's burden increases yet more." *United States v. Tate,* 524 F.3d 449, 454-455 (4th Cir. 2008) citing *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990).   The exclusion of the consent, subsequent search, and its results do not qualify as an "omission was designed to mislead or was made with reckless disregard of whether it would mislead."   *Id.*   In order to meet the burden the omitted facts must have been material and "must be such that its

inclusion in the affidavit would defeat probable cause."   *See Colkley*, 899 F.3d at 301.   Under

that analysis, the inclusion of the consent to search and search of the Defendant's vehicle would

not have defeated probable cause and therefore the defense has not met its burden.

      C.      **The Reasons for the Decision Not to Arrest the Defendant Were Not Material to the Probable Cause, and the Defense Cannot Sustain Its Burden of Proof Under *Franks* on that Issue.**

The last defense argument is that the search warrant's characterization of the reasons not to

arrest Nicholson – to avoid jeopardizing the ongoing investigation – was a misstatement.   The

defense argument fails.

First, the police department's reasons for not arresting Nicholson following his distribution

to Cook is utterly immaterial to the question of whether probable cause existed.   The reference to

jeopardizing the investigation could be struck from the Affidavit and would not change the

quantum of probable cause in any way shape or form.

Second, the defense has failed to establish an intent to mislead or reckless disregard for the

truth on this issue. The defense theory that this is also evidence of factual misrepresentation is

based purely on its assessment of whether probable cause existed to arrest Nicholson as well as

Cook.   Whether the defense believes probable cause existed or not, the investigating officers

clearly believed that they had observed the defendant engaged in criminal behavior, and therefore

felt it appropriate – whether they needed to or not – to explain why Nicholson was not arrested

along with Cook following the hand-to-hand observation . The subsequent facts of the case,

including the continuing investigation, strongly support the proposition that the police did want to

continue their probe and did not wish to jeopardize their case.

None of the defense's allegations are material discrepancies as required by *Franks.*   As

the Court is aware the defense has a heavy burden to make a preliminary showing, and that

"allegations of negligence or innocent mistake are insufficient." *United States v. Tate,* 524 F.3d 449, 454 (4th Cir. 2008) *(*citing *Franks,* 438 U.S. at 171).   Here the defense has not met their burden.

　　　　　For these reasons, the defense motion for a *Franks* hearing should be denied.

## VI.　THE MOTION TO SUPPRESS EVIDENCE TAKEN FROM THE DEFENDANT'S PERSON SHOULD BE DENIED.

　　　　　The defense argues that the evidence taken from his person should be suppressed.   The defendant was caught red-handed by the police, during the execution of the 709 Nottingham search warrant, in possession of and attempting to dispose of narcotics.   Those police observations immediately provided probable cause to arrest the defendant, which the police did (this evidence was over and above the evidence the police already had concerning the defendant's narcotics activities).   The Fourth Amendment permits law enforcement to conduct a search incident to arrest of the Defendant's person.   *See United States v. Kellam*, 568 F.3d 125, 136 (4th Cir. 2009). The evidence in question was recovered at that time.   Accordingly, Defendant's motion to suppress the evidence should be denied.

## VII.　THE MOTION TO SUPPRESS TANGIBLE AND DERIVATIVE EVIDENCE IN CONNECTION WITH FAILURE TO KNOCK AND ANNOUNCE SHOULD BE DENIED.

　　　　　Finally, the defense seeks to suppress evidence based on a violation of the "knock and announce" rule.

　　　　　First, there was no knock-and-announce violation in this case. In this case, the detectives approached, knocked and announced and then heard "Oh Shit" and water running.   Those circumstances certainly justified a police belief that that evidence was being destroyed.   That belief was reasonable, legitimate and later proven to be correct.   The possible destruction of

21

evidence justified an exception to the knock-and-announce requirement due to these "exigent circumstances."  *Richards v. Wisconsin*, 520 U.S. 385, 391 (1997); *United States v. Wardrick*, 350 F.3d 446, 451-452 (4th Cir. 1994); *United States v. Kennedy*, 32 F.3d 876, 882 (4th Cir. 1994). Exigent circumstances include potential destruction of evidence.  *See Kennedy*, 32 F.3d at 882; *United States v. Couser*, 732 F.3d 1207, 1208 (4th Cir. 1984).   This is a case in which the police knocked and announced, heard someone inside the location, had every reason to believe evidence might be destroyed, and made a proper decision to force entry.

Second, even if the Court were to conclude the detectives did not enter properly as described above, the motion to suppress should be denied because the exclusionary rule does not apply to knock-and-announce violations.  *See Hudson v. Michigan*, 547 U.S. 586, 599 (2006); *United States v. Ramos-Cruz*, 667 F.3d 487, 503 (4th Cir. 2012).

As such, the evidence taken from the location is admissible and the Defendant's motion should be denied.

## CONCLUSION

For the foregoing reasons, the motions filed by the Defendant should be denied.


Respectfully submitted,

Rod J. Rosenstein
United States Attorney


By:   _____/s/_____
Brandis Marsh
Special Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4897

Dated: January 12, 2015

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on January 12, 2015, this response was filed and served via electronic filing.

Joseph Balter, Esq


_____/s/_____
Brandis Marsh
Special Assistant United States Attorney